NO. COA13-174

NORTH CAROLINA COURT OF APPEALS

Filed: 4 February 2014

STATE OF NORTH CAROLINA

   v.                                Cumberland County
                                           No. 73 CRS 17584

LARRY STUBBS


Appeal by the State from judgment entered 5 December 2012 by Judge Gregory A. Weeks in Cumberland County Superior Court. Heard in the Court of Appeals 5 June 2013.

> *Attorney General Roy Cooper, by Assistant Attorney General Daniel P. O'Brien, for the State.*

> *Sarah Jessica Farber for defendant-appellee.*


BRYANT, Judge.


Where the trial court erred in concluding that defendant's sentence of life in prison with the possibility of parole was a violation of the Eighth Amendment, we reverse and remand the trial court order modifying defendant's original sentence.

On 7 May 1973, a complaint and warrant for arrest was issued against seventeen-year-old defendant Larry Connell Stubbs in Cumberland County.

> [The complainant alleged that on that day, defendant] unlawfully, willfully, and

> feloniously and burglariously [sic] did break and enter, at or about the hour of two o'clock AM in the night . . . the dwelling house of [the victim] located at 6697 Amanda Circle, Fayetteville, N.C. and then and there actually occupied by the said [victim], with the felonious intent [defendant], [sic] the goods and chattels of the said [victim], in the said dwelling house then and there being, then and there feloniously and burglariously [sic] to steal and carry away, said items stolen and carried away, one table lamp, one General Electric Record Player; one Magnus Electric Organ; One Portable General Electric 19" television set; . . . one man's suit color black, the personal property of [the victim], and valued at $394.00.

In addition to first-degree burglary and felonious larceny, defendant was charged with and later indicted on the charge of rape. On 6 August 1973, defendant pled guilty to second-degree burglary and assault with intent to commit rape. The State dismissed the charge of felonious larceny.

On the charge of second-degree burglary, the trial court accepted defendant's plea, entered judgment, and sentenced defendant to an active term for "his natural life."[1] On the charge

---

[1] Pursuant to N.C. Gen. Stat. § 148-58, effective in 1973, "Time of eligibility of prisoners to have cases considered," "any prisoner serving sentence for life shall be eligible [to have their cases considered for parole] when he has served 10 years of his sentence." N.C. Gen. Stat. § 148-58 (1973) (amended in 1973, effective 1 July 1974, to provide that the period a prisoner sentenced to life imprisonment must serve before being eligible for parole would be changed from ten to twenty years) (repealed 1977).

of assault with intent to commit rape, the trial court sentenced defendant to an active term of fifteen years to run concurrently with his life sentence.

On 11 May 2011, defendant filed a pro se motion for appropriate relief (MAR) in the Cumberland County Superior Court asking that his sentence of life in prison on the charge of second-degree burglary be set aside, that he be resentenced, and after awarding time served as credit toward the new sentence, that he be released from prison. As a statutory basis for the relief requested, defendant cited N.C. Gen. Stat. § 15A-1415(b)(7), "Grounds for appropriate relief which may be asserted by defendant after verdict; limitation as to time", and G.S. § 15A-1340.17, "Punishment limits for each class of offense and prior record level" pursuant to the Structured Sentencing Act codified at §§ 15A-1340.10, *et seq.* Defendant's contention was that his original sentence was grossly disproportionate to the maximum sentence he could receive for the same crime if sentenced today. Sentenced to an active term for his natural life for second-degree burglary, defendant maintained that if he had been sentenced under the Structured Sentencing Act, effective 1 October 1994, his term would have been between twenty-nine and forty-four months. "Because there has been a 'significant change' in the law," defendant

asserted that his life sentence should now be considered cruel and unusual punishment. Defendant petitioned the Superior Court to resentence him based on "evolving standards of decency under the Eighth Amendment of the United States Constitution which prohibits cruel and unusual punishment being inflicted[,] as does [] Article I, section 27 of the North Carolina Constitution." Defendant also petitioned to proceed *in forma pauperis*.

On 10 October 2011, Senior Resident Superior Court Judge Gregory A. Weeks filed an order in which he concluded that defendant's "Motion for Appropriate Relief [was] not frivolous, [had] merit, that a summary disposition [was] inappropriate, and that a hearing [was] necessary." The court appointed the Office of North Carolina Prisoner Legal Services to represent defendant.

On 13 August 2012, the State filed its Memorandum Opposing Defendant's Motion for Appropriate Relief. In its memorandum, the State addressed defendant's motion as a request for retroactive application of the Structured Sentencing Act and a challenge to his life sentence pursuant to the Cruel and Unusual Punishments Clause of the Eighth Amendment to the United States Constitution. The State maintained that defendant was not entitled to the relief sought: the Structured Sentencing Act was applicable to criminal offenses occurring on or after 1 October 1994; and "[t]o the extent

that [] Defendant's argument challenges his sentence pursuant to the Cruel and Unusual Punishments Clause of the Eighth Amendment to the United States Constitution," Eighth Amendment jurisprudence proscribes a different analysis than the one proposed by defendant. The State further asserted that our State Appellate Courts have rejected arguments similar to the one defendant presented.

On 15 August 2012, defendant, through appointed counsel, filed a Memorandum Supporting Defendant's Motion for Appropriate Relief. Acknowledging our North Carolina Supreme Court's holding which declined to retroactively apply the sentencing provisions codified under the Structured Sentencing Act, *see State v. Whitehead*, 365 N.C. 444, 722 S.E.2d 492 (2012), defendant asserted that he was entitled to relief "because his sentence of Life Imprisonment for his conviction of Second Degree Burglary in 1973 is unconstitutionally excessive under evolving standards of decency and the Eighth Amendment to the United States Constitution . . . and Article I, Section 27 of the North Carolina Constitution." Defendant asserted that "[t]o gauge evolving standards of decency, the [United States] Supreme Court looks to legislative changes and enactments." Defendant also asserted that "[t]he [Structured Sentencing Act] is the most current expression of North Carolina's assessment of appropriate and humane

sentences, and [] is an objective index of sentence proportionality for Eighth Amendment analysis purposes." "As of today, Defendant has served **nearly forty years** in prison for his Second Degree Burglary conviction. This is nearly ten times the length of time that any defendant could be ordered to serve today." Defendant contended that his sentence was excessive, that it violated the United States Constitution and the North Carolina Constitution "making it necessary to vacate Defendant's life sentence and to resentence him to a term of years that is not disproportionate, cruel, or unusual."

Following a 13 August 2012 hearing, the trial court on 5 December 2012 entered an order in which it found that on 6 August 1973, defendant pled guilty to second-degree burglary and assault with intent to commit rape. Defendant had been sentenced to life in prison for second-degree burglary along with a concurrent sentence of fifteen years imprisonment for assault with intent to commit rape. Defendant completed his sentence for assault with intent to commit rape in 1983 and was currently incarcerated solely for his second-degree burglary conviction. "As of 30 November 2012, [defendant] has been in the custody of the North Carolina Department of Public Safety for this crime for more than thirty-six years." The court found that defendant was paroled in December

2008 and that while on parole, he was charged with and convicted of driving while impaired. Subsequent to his conviction, defendant's parole status was revoked, and he was returned to incarceration. The trial court concluded that under "evolving standards, [defendant's] sentence violated the Eighth Amendment and is invalid as a matter of law." The trial court granted defendant's motion for appropriate relief and vacated the judgment entered 6 August 1973 as to the second-degree burglary conviction, resentencing defendant to a term of thirty years. Defendant was given credit for 13,652 days spent in confinement. The trial court further ordered that the North Carolina Department of Public Safety Division of Adult Correction release defendant immediately.

The State filed with this Court petitions for a writ of certiorari to review the 5 December 2012 trial court order and a writ of supersedeas to stay imposition of the trial court's order pending appeal. Both petitions were granted.[2]

---

[2] We acknowledge with appreciation the responsiveness of the State and defense counsel in providing this Court with memoranda of additional authority regarding a question presented by this Court at oral argument reflecting on our jurisdiction to hear this appeal. We also note that because one panel of this Court has previously decided the jurisdictional issue by granting the State's petition for a writ of certiorari to hear the appeal, we cannot overrule that decision. *N.C.N.B. v. Virginia Carolina Builders*, 307 N.C. 563, 567, 299 S.E.2d 629, 631-32 (1983) ("[O]nce a panel of the Court of Appeals has decided a question in a given case that decision becomes the law of the case and governs other

_____

On appeal, the State brings forth the issue of whether the Superior Court erred by ruling that defendant's 1973 sentence of life imprisonment with the possibility of parole for a second-degree burglary conviction is now in violation of the Eighth Amendment to the United States Constitution, vacating defendant's 1973 judgment, and resentencing him.  The State argues on appeal that (A) the trial court lacked jurisdiction over the original judgment and (B) that it incorrectly interpreted the precedent of the Supreme Court of the United States.

"Our review of a trial court's ruling on a defendant's MAR is 'whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court.'"  *State v. Peterson*, ___ N.C. App. ___, ___, 744 S.E.2d

_____

panels which may thereafter consider the case. Further, since the power of one panel of the Court of Appeals is equal to and coordinate with that of another, a succeeding panel of that court has no power to review the decision of another panel on the same question in the same case. Thus the second panel in the instant case had no authority to exercise its discretion [against] reviewing the trial court's order when a preceding panel had earlier decided to the contrary."). However, a separate concurring and a separate dissenting opinion further address the issue of jurisdiction to hear this appeal.

153, 157 (2013) (quoting *State v. Stevens*, 305 N.C. 712, 720, 291 S.E.2d 585, 591 (1982)).

*A*

The State argues that the trial court lacked jurisdiction over the original judgment. Specifically, the State contends that defendant's motion for appropriate relief was made pursuant to N.C. Gen. Stat. § 15A-1415 but that no provision of section 15A-1415 granted the trial court jurisdiction to modify the original sentence. We disagree.

A trial court loses jurisdiction to modify a defendant's sentence, "subject to limited exceptions, after the adjournment of the session of court in which [the] defendant receive[s] this sentence[,] [a]lthough a trial court may properly modify a sentence after the trial term upon submission of a [Motion for Appropriate Relief (MAR)][.]" *Whitehead*, 365 N.C. at 448, 722 S.E.2d at 495 (citations omitted). Section 15A-1415 of the North Carolina General Statutes lists "the only grounds which the defendant may assert by a motion for appropriate relief made more than 10 days after entry of judgment[.]" N.C. Gen. Stat. § 15A-1415(b) (2011).

At the 13 August 2012 hearing on defendant's MAR, defendant contended that he was entitled to relief pursuant to N.C. Gen. Stat. § 15A-1415(b)(8). In its 5 December 2012 order, the trial

court concluded that its authority over the 6 August 1973 judgment was allowed pursuant to N.C.G.S. § 15A-1415(b)(4) & (b)(8).

Pursuant to General Statutes, section 15A-1415, a defendant may assert by MAR made more than ten days after entry of judgment the following grounds:

> (4) The defendant was convicted or sentenced under a statute that was in violation of the Constitution of the United States or the Constitution of North Carolina.
>
> . . .
>
> (8) The sentence imposed was unauthorized at the time imposed, contained a type of sentence disposition or a term of imprisonment not authorized for the particular class of offense and prior record or conviction level was illegally imposed, or is otherwise invalid as a matter of law.

N.C.G.S. § 15A-1415(b)(4) & (b)(8).

The gravamen of the argument presented in defendant's MAR submitted to the trial court is that because "his sentence of Life Imprisonment for his conviction of Second Degree Burglary in 1973 is unconstitutionally excessive under evolving standards of decency and the Eighth Amendment to the United States Constitution . . . and Article I, Section 27 of the North Carolina Constitution," the trial court had jurisdiction over the 6 August 1973 judgment to consider whether defendant's sentence was "invalid as a matter of law." N.C.G.S. § 15A-1415(b)(8); *see also*

N.C.G.S. ' 15A-1415(b)(4).  We agree and therefore, overrule the State's challenge to the trial court's jurisdiction.

*B*

The State further contends that the trial court misapplied United States Supreme Court precedent, applying the wrong test to determine whether an Eighth Amendment violation has occurred.  We agree in part.

The Eighth Amendment to the United States Constitution states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted[,]"  U.S. Const. amend. VIII, and is made applicable to the States by the Fourteenth Amendment, *id.* amend. XIV.  The Constitution of North Carolina similarly states, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted."  N.C. Const. art. I, § 27.  Despite the difference between the two constitutions, one prohibiting "cruel and unusual punishments," the other "cruel or unusual punishments," "[our North Carolina Supreme Court] historically has analyzed cruel and/or unusual punishment claims by criminal defendants the same under both the federal and state Constitutions."  *State v. Green*, 348 N.C. 588, 603, 502 S.E.2d 819, 828 (1998) (citations omitted), *superseded by statute on other*

*grounds as stated in In re J.L.W.*, 136 N.C. App. 596, 525 S.E.2d 500 (2000).

"The basic concept underlying the Eighth Amendment is nothing less than the dignity of man. . . . [T]he words of the Amendment are not precise, and [] their scope is not static. The Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 100-01, 2 L. Ed. 2d 630, 642 (1958) (citation omitted). "The [Eighth] Amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . , against which we must evaluate penal measures." *Estelle v. Gamble*, 429 U.S. 97, 102-03, 50 L. Ed. 2d 251, 259 (1976) (citation and quotations omitted).

In *Estelle v. Gamble*, the United States Supreme Court observed that when the Court initially applied the Eight Amendment, the challenged punishments regarded methods of execution. *Id.* at 102, 50 L. Ed. 2d at 258. However, "the Amendment proscribes more than physically barbarous punishments." *Id.* at 102, 50 L. Ed. 2d 259.

> To determine whether a punishment is cruel and unusual, courts must look beyond historical conceptions to the evolving standards of decency that mark the progress of a maturing society. This is because the standard of extreme cruelty is not merely descriptive, but necessarily embodies a moral judgment. The standard itself remains the

same, but its applicability must change as the basic mores of society change.

*Graham v. Florida*, 560 U.S. 48, 58, 176 L. Ed. 2d 825, 835 (2010) (citations, quotations, and bracket omitted).

> [T]he Eighth Amendment's protection against excessive or cruel and unusual punishments flows from the basic precept of justice that punishment for a crime should be graduated and proportioned to the offense. Whether this requirement has been fulfilled is determined not by the standards that prevailed when the Eighth Amendment was adopted in 1791 but by the norms that currently prevail. The Amendment draws its meaning from the evolving standards of decency that mark the progress of a maturing society.

*Kennedy v. Louisiana*, 554 U.S. 407, 419, 171 L. Ed. 2d 525, 538 (citations and quotations omitted) *opinion modified on denial of reh'g*, 554 U.S. 945, 171 L. Ed. 2d 932 (2008).

> The concept of proportionality is central to the Eighth Amendment. . . .
>
> The Court's cases addressing the proportionality of sentences fall within two general classifications. The first involves challenges to the length of term-of-years sentences given all the circumstances in a particular case. The second comprises cases in which the Court implements the proportionality standard by certain categorical restrictions on the death penalty.

*Graham*, 560 U.S. at 59, 176 L. Ed. 2d at 835-36.

As to the first classification, in which the Court considers whether a term-of-years sentence is unconstitutionally excessive

given the circumstances of a case, the Court noted that "it has been difficult for [challengers] to establish a lack of proportionality." *Id.* at 59, 176 L. Ed. 2d at 836. Referring to *Harmelin v. Michigan*, 501 U.S. 957, 115 L. Ed. 2d 836 (1991), as a leading case on the review of Eighth Amendment challenges to term-of-years sentences as disproportionate, Justice Kennedy delivering the opinion of the *Graham* Court acknowledged his concurring opinion in *Harmelin*: "[T]he Eighth Amendment contains a 'narrow proportionality principle,' that 'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are "grossly disproportionate" to the crime.'" *Graham*, 560 U.S. at 59-60, 176 L. Ed. 2d at 836 (quoting *Harmelin*, 501 U.S. at 997, 1000-1001, 115 L. Ed. 2d at 836 (Kennedy, J., concurring in part and concurring in judgment)). *Accord Rummel v. Estelle*, 445 U.S. 263, 288, 63 L. Ed. 2d 382 (1980) (Powell, J., dissenting (The scope of the Cruel and Unusual Punishments Clause extends . . . to punishments that are grossly disproportionate. Disproportionality analysis . . . focuses on whether, a person deserves such punishment . . . . A statute that levied a mandatory life sentence for overtime parking might well deter vehicular lawlessness, but it would offend our felt sense of justice. The Court concedes today

that the principle of disproportionality plays a role in the review of sentences imposing the death penalty, but suggests that the principle may be less applicable when a noncapital sentence is challenged.")).

In *Harmelin*, 501 U.S. 957, 115 L. Ed. 2d 836, the defendant challenged his sentence of life in prison without possibility of parole on the grounds that it was "significantly" disproportionate to his crime, possession of 650 or more grams of cocaine. The defendant further argued that because the sentence was mandatory upon conviction, it amounted to cruel and unusual punishment as it precluded consideration of individual mitigating circumstances. *Id.* at 961, 115 L. Ed. 2d at 843 n.1. In an opinion delivered by Justice Scalia, a majority of the Court held that the sentence was not cruel and unusual punishment solely because it was mandatory upon conviction. In addressing the defendant's alternative argument, that his sentence of life in prison without possibility of parole was significantly disproportionate to his crime of possessing 650 or more grams of cocaine, a majority of the Court concluded that the defendant's sentence did not run afoul of the Eighth Amendment; however, the Court revealed varied views as to whether the Eighth Amendment includes a protection against disproportionate sentencing and if so, to what extent. *See also*

*Ewing v. California*, 538 U.S. 11, 155 L. Ed. 2d 108 (2003) (holding that the defendant's sentence of twenty-five years to life for felony grand theft under California's "three strikes and you're out" law did not violate the Eighth Amendment's prohibition on cruel and unusual punishments). *Cf. Solem v. Helm*, 463 U.S. 277, 77 L. Ed. 2d 637 (1983) (holding that South Dakota's sentence of life without possibility of parole for uttering a "no account" check after the defendant had previously been convicted of six non-violent felonies was disproportionate to his crime and prohibited by the Eighth Amendment).

We return our attention to *Graham v. Florida* which sets out the second classification of Eighth Amendment proportionality challenges as "implement[ing] the proportionality standard by certain categorical restrictions on the death penalty." *Graham*, 560 U.S. at 59, 176 L. Ed. 2d at 836. But, rather than a challenge to a capital sentence, the *Graham* Court was presented with a categorical challenge to a term-of-years sentence: whether the imposition of life in prison without the possibility of parole for a nonhomicide crime committed by a sixteen-year-old juvenile offender violated the Eighth Amendment. In its reasoning, the Court made the following observation:

> [L]ife without parole is the second most severe penalty permitted by law. . . . [L]ife

> without parole sentences share some
> characteristics with death sentences that are
> shared by no other sentences. . . . [T]he
> sentence alters the offender's life by a
> forfeiture that is irrevocable. It deprives
> the convict of the most basic liberties
> without giving hope of restoration, except
> perhaps by executive clemency—the remote
> possibility of which does not mitigate the
> harshness of the sentence.

*Id.* at 69-70, 176 L. Ed. 2d at 842. The Court concluded that the severity of a sentence imposing life without parole for a person who was a juvenile at the time his nonhomicide offense was committed is a sentencing practice that is cruel and unusual. *Id.* at 74, 176 L. Ed. 2d at 845. However, the Court went on to note that this sentencing preclusion may not lessen the duration of a sentence.

> A State is not required to guarantee eventual
> freedom to a juvenile offender convicted of a
> nonhomicide crime. What the State must do,
> however, is give [the] defendant[] . . . some
> meaningful opportunity to obtain release based
> on demonstrated maturity and rehabilitation.
> It is for the State, in the first instance, to
> explore the means and mechanisms for
> compliance. *It bears emphasis . . . that while
> the Eighth Amendment forbids a State from
> imposing a life without parole sentence on a
> juvenile nonhomicide offender, it does not
> require the State to release that offender
> during his natural life. . . . The Eighth
> Amendment does not foreclose the possibility
> that persons convicted of nonhomicide crimes
> committed before adulthood will remain behind
> bars for life.*

*Id.* at 75, 176 L. Ed. 2d at 845-46 (emphasis added).

As a means of obtaining release from incarceration, our North Carolina General Assembly has created by statute a Post-Release Supervision and Parole Commission. N.C. Gen. Stat. ' 143B-720 (2011). With the exception of those sentenced under the Structured Sentencing Act, the Commission has "authority to grant paroles . . . to persons held by virtue of any final order or judgment of any court of this State . . . ." *Id.* ' 143B-720(a). Furthermore, the Commission is to assist the Governor and perform such services as the Governor may require in exercising his executive clemency powers. *Id.* We note that in *State v. Whitehead*, 365 N.C. 444, 722 S.E.2d 492 (2012), a case reviewing the retroactive application of a less severe sentencing statute, our Supreme Court also drew attention to the powers of the Post-Release Supervision and Parole Commission.

> In 2005, 2007, 2009, and 2011, the General Assembly directed the Post-Release Supervision and Parole Commission to determine whether inmates sentenced under *previous sentencing standards* have served more time in custody than they would have served if they had received the maximum sentence under the SSA. [Defendant's sentence appears to fall within the purview of this directive.]. . . In addition, wholly independent of the Commission's grant of authority, the state constitution empowers the Governor to "grant reprieves, commutations, and pardons, after conviction, for all offenses ... upon such

> conditions as he may think proper." N.C.
> Const. art. III, § 5(6).

*Id.* at 448, 722 S.E.2d at 496 n.1 (emphasis added).[3]

The *Whitehead* Court considered a trial court order granting a defendant's MAR requesting that his life sentence imposed following a guilty plea entered 29 July 1994 and imposed pursuant to the Fair Sentencing Act for a homicide occurring 25 August 1993 be modified by retroactively applying the sentencing provisions of the Structured Sentencing Act applicable to offenses committed on or after 1 October 1994. *Id.* Vacating and remanding the judgment and order of the trial court, our Supreme Court stated that "[c]riminal sentences may be invalidated for cognizable legal error demonstrated in appropriate proceedings. But, in the absence of legal error, it is not the role of the judiciary to engage in discretionary sentence reduction." *Id.* at 448, 722 S.E.2d at 496.

In the matter before us, we note that on 7 May 1973, the date of the offense for which defendant was charged with committing the offense of second-degree burglary, he was seventeen years old.[4]

---

[3] While this quote from *Whitehead*, 365 N.C. at 448, 722 S.E.2d at 496 n.1, is a footnote, we think it is relevant to the instant case wherein defendant, like the defendant in *Whitehead*, was sentenced under a "previous sentencing standard," and defendant would have fallen within the directives of the Parole Commission.

[4] At the time of his offense, North Carolina General Statutes, Chapter 7A, Article 23, entitled "Jurisdiction and Procedure

On 6 August 1973, the date defendant pled guilty to second-degree burglary, defendant was eighteen. Defendant was sentenced to incarceration for "his natural life." Pursuant to our General Statutes in effect at that time, any prisoner serving a life sentence was eligible to have his case considered for parole after serving ten years of his sentence. N.C.G.S. ' 148-58. The record is not clear how often defendant was considered for parole. However, after serving over thirty-five years, defendant was paroled in December 2008. In 2010, defendant was convicted of driving while impaired. He was sentenced and served 120 days in jail. Thereafter, his parole was revoked and his life sentence reinstated.

"[L]ife imprisonment with possibility of parole is [] unique in that it is the third most severe [punishment]." *Harmelin*, 501 U.S. at 996, 115 L. Ed. 2d at 865. Nevertheless, in the body of case law involving those who commit nonhomicide criminal offenses even as juveniles, sentences allowing for the "realistic opportunity to obtain release before the end of [a life] term" do not violate the prohibitions of the Eighth Amendment. *Graham*, 560

---

Applicable to Children," defined "Child" as "any person who has not reached his sixteenth birthday." N.C. Gen. Stat. § 7A-278(1) (1973). As defendant was seventeen at the time of his offense, he did not come within the aegis of the Chapter 7A, Article 23.

U.S. at 82, 176 L. Ed. 2d at 850. Defendant's sentence allows for the realistic opportunity to obtain release before the end of his life. In fact, defendant was placed on parole in December 2008 prior to his 2010 conviction for the offense of driving while impaired, which led to the revocation of his parole and reinstatement of his life sentence. As our Supreme Court has not indicated a preference for discretionary sentence reduction, *see Whitehead*, 365 N.C. at 448, 722 S.E.2d at 496 ("[I]t is not the role of the judiciary to engage in discretionary sentence reduction."), and our General Assembly has directed the Post-Release Supervision and Parole Commission to review matters of proportionality, *see* N.C.G.S. ' 143B-720; *Whitehead*, 365 N.C. at 449, 722 S.E.2d at 496 n.1, we hold that the trial court erred in concluding defendant's life sentence violated the prohibitions of the Eighth Amendment to the United States Constitution. *See Rummel v. Estelle*, 445 U.S. 263, 283-84, 63 L. Ed. 2d 382, 397 (1980) ("Perhaps . . . time works changes upon the Eighth Amendment, bringing into existence new conditions and purposes. We all, of course, would like to think that we are moving down the road toward human decency. Within the confines of this judicial proceeding, however, we have no way of knowing in which direction that road lies. Penologists themselves have been unable to agree whether

sentences should be light or heavy, discretionary or determinate. This uncertainty reinforces our conviction that any nationwide trend toward lighter, discretionary sentences must find its source and its sustaining force in the legislatures, not in the [] courts." (citations and quotations omitted)). It should be stated that by all accounts based on today's sentencing standards, defendant's sentence cannot be viewed as anything but severe. Since 1973 at the age of eighteen, defendant has been incarcerated for all but less than two years. There is no record of an appeal from the 1973 conviction, and the record before us does not provide details of the circumstances which led to defendant's arrest or the injury to the victim. Regardless, we must address only what is, as opposed to what is not, before us. Upon review of the arguments presented and cases cited, defendant's outstanding sentence of life in prison with possibility of parole for second-degree burglary, though severe, is not cruel or unusual in the constitutional sense. *See Green*, 348 N.C. at 603, 502 S.E.2d at 828. Accordingly, we reverse the Superior Court's 5 December order modifying defendant's original sentence and remand to the trial court for reinstatement of the original 6 August 1973 judgment and commitment.

Reversed and remanded.

Judge DILLON concurs by separate opinion.

Judge STEPHENS dissents by separate opinion.

NO. COA13-174

NORTH CAROLINA COURT OF APPEALS

Filed: 4 February 2014

STATE OF NORTH CAROLINA

 v.

LARRY STUBBS

Cumberland County
No. 73 CRS 17584

  DILLON, Judge, concurring in separate opinion.

  I agree with the majority opinion. However, I write to address the jurisdiction question raised by the parties and discussed in footnote 2 of the majority opinion. I believe that the "law of the case" principle, referenced in that footnote, generally compels a panel of this Court to follow the decisions of another panel made in the same case. However, I do not believe a panel is compelled to follow the "law of the case" where the issue concerns subject matter jurisdiction. *See McAllister v. Cone Mills Corporation*, 88 N.C. App. 577, 364 S.E.2d 186 (1988). In *McAllister* we held that a superior court judge had the authority to determine whether it had subject matter jurisdiction to consider a matter after another superior court judge, in a prior hearing, had denied a motion to dismiss the matter based on lack of subject matter jurisdiction, stating that "[i]f a court finds at any stage of the proceedings that it lacks jurisdiction over the subject

matter of a case, it must dismiss the case for want of jurisdiction." *Id.* at 579, 364 S.E.2d at 188. Therefore, I believe we are compelled to make a determination whether the panel of this Court which granted the State's petition for writ of certiorari – which is the basis for our panel's jurisdiction - had the authority to do so.

The North Carolina Constitution states that this Court has appellate jurisdiction "as the General Assembly may prescribe." N.C. Const. Article IV, Section 12(2). Our General Assembly has prescribed that this Court has jurisdiction "to issue . . . prerogative writs, including . . . certiorari . . . to supervise and control the proceedings of any of the trial courts. . . ." N.C. Gen. Stat. § 7A-32(c) (2011).[5] The General Assembly further has prescribed that the "practice and procedure" by which this Court exercises its jurisdiction to issue writs of certiorari is provided, in part, by "rule of the Supreme Court." *Id.* The Supreme Court has enacted the Rules of Appellate Procedure, which includes Rule 21, providing that writs of certiorari may be issued by either this Court or the Supreme Court in three specific

---

[5] This language employed by the General Assembly is similar to the language in our Constitution defining the jurisdictional limits of our Supreme Court, which includes the authority of "general supervision and control over the proceedings of the other courts." N.C. CONST. art. IV, § 12(1).

circumstances, none of which applies to the State's appeal in this case.

Defendant argues that the subject matter jurisdiction of this Court to issue writs of certiorari is limited to the three circumstances listed in Rule 21. The State argues that Rule 21 is not intended to limit the subject matter jurisdiction of this Court but is simply a "rule" establishing a "practice and procedure," and that Rule 2 – which allows this Court to "suspend or vary the requirements of any of these rules" – provides an avenue by which this Court may exercise the jurisdiction granted by the General Assembly in N.C. Gen. Stat. § 7A-32 to issue writs of certiorari for matters not stated in Rule 21. There is language in decisions of this Court which *suggests* that our authority to grant writs of certiorari is limited to the three circumstances described in Rule 21. *See*, *e.g.*, *State v. Pimental*, 153 N.C. App. 69, 77, 568 S.E.2d 867, 872 (2002) (*dismissing* a petition for writ of certiorari, stating that since the appeal was not within the scope of Rule 21, this Court "does not have the authority to issue a writ of certiorari"). However, there is language in other decisions which *suggests* that this Court may invoke Rule 2 to consider writs of certiorari in circumstances not covered by Rule 21. *See*, *e.g.*, *State v. Starkey*, 177 N.C. App. 264, 268, 628 S.E.2d 424, 426

(2006) (*denying* a petition for writ of certiorari by refusing to invoke Rule 2).

I believe that our approach in *Starkey* – suggesting that our subject matter jurisdiction to issue writs of certiorari is not limited to the circumstances contained in Rule 21 – is correct. Our Supreme Court and this Court has recognized the authority of our appellate courts to issue writs of certiorari in circumstances not contained in Rule 21. *See*, *e.g.*, *State v. Bolinger*, 320 N.C. 596, 601-02, 359 S.E.2d 459, 462 (1987) (holding that a defendant may obtain appellate review through a writ of certiorari to challenge the procedures followed in accepting a guilty plea, notwithstanding that the defendant does not have the statutory right to appellate review); *see also State v. Carriker*, 180 N.C. App. 470, 471, 637 S.E.2d 557, 558 (2006) (holding that a challenge to procedures in accepting a guilty plea is reviewable by *certiorari*). Additionally, in Rule 1 of the Rules of Appellate Procedure, our Supreme Court stated that the appellate rules "shall not be construed to extend or limit the jurisdiction of the courts of the appellate division[.]" *Id*.

Accordingly, I believe that the panel of this Court which considered the State's petition for a writ of certiorari had the authority to grant the writ, notwithstanding that an appeal by the

State from an order granting a defendant's motion for appropriate relief is not among the circumstances contained in N.C.R. App. P. 21; and, therefore, we are bound by the decision of that panel.

NO. COA13-174

NORTH CAROLINA COURT OF APPEALS

Filed: 4 February 2014

STATE OF NORTH CAROLINA

    v.                        Cumberland County
                                    No. 73 CRS 17584

LARRY STUBBS


STEPHENS, Judge, dissenting.

Because I believe that this Court lacks subject matter jurisdiction to review the State's arguments, I respectfully dissent.

In support of its determination that this panel is bound by the decision of a petition panel of this Court that we have subject matter jurisdiction to grant the State's petition for writ of *certiorari*, the majority cites our Supreme Court's opinion in *North Carolina Nat. Bank v. Virginia Carolina Builders*, 307 N.C. 563, 567, 299 S.E.2d 629, 631-32 (1983) ("[O]nce a panel of the Court of Appeals has decided a question in a given case that decision becomes the law of the case and governs other panels which may thereafter consider the case. Further, since the power of one panel of the Court of Appeals is equal to and coordinate with that of another, a succeeding panel of that court has no power to review

the decision of another panel on the same question in the same case. Thus the second panel in the instant case had no authority to exercise its discretion in favor of reviewing the trial court's order when a preceding panel had earlier decided to the contrary."). In my view, *Virginia Carolina Builders* is clearly distinguishable from the issue presented in the case at bar because it concerned a Court of Appeals panel's reconsideration of a prior panel's exercise of discretion, rather than a question regarding this Court's subject matter jurisdiction over a matter.

In *Virginia Carolina Builders*, the appellant sought review of an interlocutory order. *Id.* at 565, 299 S.E.2d at 630. The appellant gave notice of appeal from the order, but prior to filing the record with this Court, he petitioned for writ of *certiorari*. *Id.* A panel of this Court denied that petition. *Id.* Thereafter, the appellant filed the record on appeal with this Court and presented arguments on the merits of his claims. *Id.* Two judges of a second panel of this Court, to whom the appeal was assigned, recognized that the order appealed from was interlocutory and would ordinarily be nonappealable, but nonetheless elected to reach the merits in their "discretion[.]" *Id.* at 565, 299 S.E.2d at 630-31. Based on the dissent of one judge who would have dismissed the appeal, the appellees sought review as a matter of right in

the Supreme Court.  *Id.* at 565-66, 299 S.E.2d at 631.

The Supreme Court stated:

> Although we have never considered the question, well-established analogies in our law lead us to conclude that the second panel of the Court of Appeals was without authority to overrule the first on the same question in the same case.  Once an appellate court has ruled on a question, that decision becomes the law of the case and governs the question not only on remand at trial, but on a subsequent appeal of the same case.  At the trial level the well[-]established rule in North Carolina is that no appeal lies from one Superior Court judge to another; that one Superior Court judge may not correct another's errors of law; and that ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action.  The power of one judge of the superior court is equal to and coordinate with that of another, and a judge holding a succeeding term of court has no power to review a judgment rendered at a former term on the ground that the judgment is erroneous.

> Applying these principles to the question before us, we conclude that once a panel of the Court of Appeals has decided a question in a given case that decision becomes the law of the case and governs other panels which may thereafter consider the case.  Further, since the power of one panel of the Court of Appeals is equal to and coordinate with that of another, a succeeding panel of that court has no power to review the decision of another panel on the same question in the same case.  Thus the second panel in the instant case had no authority to exercise its discretion in favor of reviewing the trial court's order when a preceding panel had earlier decided to the contrary.

> Our decision on this point in no way impinges on the power of this Court or the Court of Appeals to change its ruling upon a motion to rehear, or on the court's own motion, if the court determines that its former ruling was clearly erroneous.  In the case of the Court of Appeals, however, such a change must be made, if at all, by the same panel which initially decided the matter.  Otherwise, a party against whom a decision was made by one panel of the Court of Appeals could simply continue to press a point in that court hoping that some other panel would eventually decide it favorably, as indeed the plaintiff did in this case; and we would not have that orderly administration of the law by the courts, which litigants have a right to expect.

*Id.* at 566-67, 299 S.E.2d at 631-32 (citations, internal quotation marks, and some brackets omitted).

I fully agree that in matters such as the exercise of discretion, factual determinations, and legal rulings, one panel of this Court cannot overrule another.  However, I believe that determination of subject matter jurisdiction presents a different situation, one to which the analysis of *Virginia Carolina Builders* plainly does not apply.  "Characterizing a rule as jurisdictional renders it unique in our adversarial system." *Sebelius v. Auburn Reg'l Med. Ctr.*, __ U.S. __, __, 184 L. Ed. 2d 627, 637 (2013) (noting that "[o]bjections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy").

"Subject[]matter jurisdiction defines the court's authority to hear a given type of case[.]" *United States v. Morton*, 467 U.S. 822, 828, 81 L. Ed. 2d 680, 688 (1984). A "lack of jurisdiction of the subject matter may always be raised by a party, or the court may raise such defect on its own initiative." *Dale v. Lattimore*, 12 N.C. App. 348, 352, 183 S.E.2d 417, 419, *cert. denied*, 279 N.C. 619, 184 S.E.2d 113 (1971). "If a court finds *at any stage of the proceedings* that it lacks jurisdiction over the subject matter of a case, it must dismiss the case for want of jurisdiction." *McAllister v. Cone Mills Corp.*, 88 N.C. App. 577, 579, 364 S.E.2d 186, 188 (1988) (emphasis added) (citing *Burgess v. Gibbs*, 262 N.C. 462, 465, 137 S.E. 2d 806, 808 (1964) ("[T]he proceedings of a court without jurisdiction of the subject matter are a nullity. If a court finds at any stage of the proceedings it is without jurisdiction, it is its duty to take notice of the defect and stay, quash or dismiss the suit. This is necessary, to prevent the court from being forced into an act of usurpation, and compelled to give a void judgment. So, *ex necessitate*, the court may, on plea, suggestion, motion, or *ex mero motu*, where the defect of jurisdiction is apparent, stop the proceeding.") (citation and internal quotation marks omitted)). Further, "parties cannot stipulate to give a court subject matter jurisdiction where no

such jurisdiction exists." *Northfield Dev. Co. v. City of Burlington*, 165 N.C. App. 885, 887, 599 S.E.2d 921, 924 (citation omitted), *disc. review denied*, 359 N.C. 191, 607 S.E.2d 278 (2004).

My careful review of our State's statutory and case law reveals that this Court lacks subject matter jurisdiction to consider the State's arguments via review of a trial court's allowance of a motion for appropriate relief ("MAR") or by issuance of a writ of *certiorari*.

In *State v. Starkey*, immediately after entering judgment on a jury's verdict, the trial court entered an order *sua sponte* granting its own MAR regarding the defendant's sentence. 177 N.C. App. 264, 266, 628 S.E.2d 424, 425, *cert denied*, __ N.C. __, 636 S.E.2d 196 (2006). The trial court found that the defendant's sentence violated "his rights under the Eighth and Fourteenth Amendments to the United States Constitution." *Id.* On appeal, in *Starkey*, we considered the same two issues as presented in this matter: "(I) whether the State ha[d] a right to appeal from the entry of [an] order granting the trial court's motion for appropriate relief; and (II) whether this Court [could] grant the State's [p]etition for [w]rit of *[c]ertiorari*.") (italics added). *Id.*

As noted in that case, "the right of the State to appeal in

a criminal case is statutory, and statutes authorizing an appeal by the State in criminal cases are strictly construed." *Id.* (citation, internal quotation marks, and brackets omitted). Two sections of our General Statutes touch on the State's possible right of appeal here: that discussing appeals by the State in general and those covering appeals from MARs specifically. My careful review, along with a plain reading of *Starkey*, reveals no authority for the State's purported appeal or petition for writ of *certiorari* here.

Our General Statutes provide:

> (a) Unless the rule against double jeopardy prohibits further prosecution, *the State may appeal[6] from the superior court to the appellate division*:

---

[6] As this Court has noted,

> [a]ppeal is defined in [section] 15A-101(0.1): "Appeal. — When used in a general context, the term 'appeal' also includes appellate review upon writ of *certiorari*." Applying this definition to [section] 15A-1445, we hold the word "appeal" in the statute includes "appellate review upon writ of *certiorari*." Otherwise, the legislature would have used such language as "the [S]tate shall have a right of appeal." By way of contrast, the legislature in setting out when a defendant may appeal, uses the phrase "is entitled to appeal as a matter of right." N.C. Gen. Stat. [§] 15A-1444(a).

*State v. Ward*, 46 N.C. App. 200, 204, 264 S.E.2d 737, 740 (1980) (italics added).

(1) When there has been a decision or judgment dismissing criminal charges as to one or more counts.

(2) Upon the granting of a motion for a new trial on the ground of newly discovered or newly available evidence but only on questions of law.

(3) When the State alleges that the sentence imposed:

a. Results from an incorrect determination of the defendant's prior record level under [section] 15A-1340.14 or the defendant's prior conviction level under [section] 15A-1340.21;

b. Contains a type of sentence disposition that is not authorized by [section] 15A-1340.17 or [section] 15A-1340.23 for the defendant's class of offense and prior record or conviction level;

c. Contains a term of imprisonment that is for a duration not authorized by [section] 15A-1340.17 or [section] 15A-1340.23 for the defendant's class of offense and prior record or conviction level; or

d. Imposes an intermediate punishment pursuant to [section] 15A-1340.13(g) based on findings of extraordinary mitigating circumstances that are not supported by evidence or are insufficient as a matter of law to support the dispositional deviation.

(b) The State may appeal an order by the superior court granting a motion to suppress as provided in [section] 15A-979.

N.C. Gen. Stat. § 15A-1445 (2013) (emphasis added).

As observed in *Starkey*, an appeal from the grant of a defendant's MAR as occurred here implicates none of these conditions:

> The relief granted by the trial court might be considered to have effectively dismissed [the] defendant's charge of having attained the status of an habitual felon or imposed an unauthorized prison term in light of [the] defendant's status as an habitual felon. However, it is the underlying judgment and not the order granting this relief from which the State must have the right to take an appeal. The State does not argue and we do not find that the underlying judgment dismisses a charge against defendant or that the term of imprisonment imposed was not authorized. The State therefore has no right to appeal from the underlying judgment and this appeal is not one "regularly taken." This appeal must be dismissed.

*Starkey*, 177 N.C. App. at 267, 628 S.E.2d at 426.

The mention of an appeal "regularly taken" refers to subsection 15A-1422(b) of our General Statutes, which covers MARs: "The grant or denial of relief sought pursuant to [section] 15A-1414 is subject to appellate review only in an appeal regularly taken." N.C. Gen. Stat. § 15A-1422(b) (2013). In turn, section 15A-1414 covers errors which may be asserted in MARs filed within ten days following entry of a judgment upon conviction, N.C. Gen. Stat. § 15A-1414 (2013), while section 15A-1415 specifies the "[g]rounds for appropriate relief which may be asserted by [a]

defendant" outside that ten-day time period.  N.C. Gen. Stat. §

15A-1415 (2013).  Because Defendant here filed his MAR more than

ten days after entry of judgment upon his convictions, section

15A-1422(c) applies to the matter before us:[7]

> The court's ruling on a motion for appropriate relief pursuant to [section] 15A-1415 is subject to review:
>
>     (1) If the time for appeal from the conviction has not expired, by appeal.
>
>     (2) If an appeal is pending when the ruling is entered, in that appeal.
>
>     (3) *If the time for appeal has expired and no appeal is pending, by writ of certiorari.*

N.C. Gen. Stat. § 15A-1422(c) (emphasis added).  Here, the time

for appeal had long passed, and there was no appeal pending when

the MAR was ruled upon, rendering subsections (a) and (b)

inapplicable.

As for the availability of appellate review via writ of

*certiorari*, this Court in *Starkey* held:

> Review by this Court pursuant to a [p]etition for [w]rit of [c]*ertiorari* is governed by Rule 21 of the North Carolina Rules of Appellate Procedure.  Pursuant to Rule 21, this Court is

---

[7] Nothing in *Starkey* or the relevant statutes suggests that the timing of the MAR's filing (*i.e.*, within or outside of the ten-day period) would have any effect on the reasoning of the Court in dismissing the State's purported appeal.  Neither section 15A-1414 nor 15A-1415 would permit the appeal by the State in the case before us.

limited to issuing a writ of *certiorari*:

> to permit review of the judgments and orders of trial tribunals when [1] the right to prosecute an appeal has been lost by failure to take timely action, or [2] when no right of appeal from an interlocutory order exists, or [3] for review pursuant to [section] 15A-1422(c)(3) of an order of the trial court denying a motion for appropriate relief.
>
> The State recognizes that its petition does not satisfy any of the conditions of Rule 21 and asks this Court to invoke Rule 2 of the North Carolina Rules of Appellate Procedure and review the trial court's order.

*Starkey*, 177 N.C. App. at 268, 628 S.E.2d at 426 (citation and internal quotation marks omitted; italics added). This Court declined "the State's request to invoke Rule 2 and den[ied] the State's [p]etition for [w]rit of [c]*ertiorari*." *Id.*[8] (italics added). As noted *supra* and as was the case in *Starkey*, none of the circumstances permitting this Court to grant a writ of *certiorari* are presented in the matter before us.

The order entered by this Court on 13 December 2012 cites

---

[8] Although the language used by this Court in *Starkey* suggests that the panel *could* have invoked Rule 2 and granted the petition, Rule 21 is jurisdictional, *see* N.C. Gen. Stat. § 7A-32(c) (2013), and thus cannot be obviated by invocation of Rule 2. *See Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 198, 657 S.E.2d 361, 365 (2008) (noting that "in the absence of jurisdiction, the appellate courts lack authority to consider whether the circumstances of a purported appeal justify application of Rule 2").

three authorities which purportedly give this Court jurisdiction to grant the State's petition: N.C. Const. art. IV, § 12(2), N.C. Gen. Stat. § 7A-32(c), and *State v. Whitehead*, 365 N.C. 444, 722 S.E.2d 492 (2012). The cited constitutional provision merely states that "[t]he Court of Appeals shall have such appellate jurisdiction as the General Assembly may prescribe." N.C. Const. art. IV, § 12(2). In turn, section 7A-32(c) provides:

> The Court of Appeals has jurisdiction, exercisable by one judge or by such number of judges as the Supreme Court may by rule provide, to issue the prerogative writs, including *mandamus*, prohibition, *certiorari*, and *supersedeas*, in aid of its own jurisdiction, or to supervise and control the proceedings of any of the trial courts of the General Court of Justice, and of the Utilities Commission and the Industrial Commission. *The practice and procedure shall be as provided by statute or rule of the Supreme Court, or, in the absence of statute or rule, according to the practice and procedure of the common law.*

N.C. Gen. Stat. § 7A-32(c) (emphasis added). The 13 December 2012 order states that this Court has jurisdiction to grant the State's petition in order "to supervise and control the proceedings of any of the trial courts of the General Court of Justice[.]" *Id.* However, the plain language of the statute states that this jurisdiction is circumscribed by "*statute*[,] *rule of the Supreme Court, . . . [or] the common law.*" *Id.* There is no statute or common law principle giving us jurisdiction to grant the State's

petition.  Further, as discussed *supra*, Rule 21 of our Rules of Appellate Procedure, set forth by our Supreme Court, does not permit this Court to grant petitions of *certiorari* in the circumstances presented here.

Finally, *Whitehead* is inapposite.  That case was issued by our Supreme Court which, in contrast to the purely statutory and rule-based jurisdiction and power of this Court, has independent constitutional "'jurisdiction to review upon appeal any decision of the courts below.'"  365 N.C. at 445, 722 S.E.2d at 494 (quoting N.C. Const. art. IV, § 12(1) ("The Supreme Court shall have jurisdiction to review upon appeal any decision of the courts below, upon any matter of law or legal inference.")).  The Supreme Court stated that it "will not hesitate to exercise *its* rarely used *general supervisory authority* when necessary . . . ."  *Id.* at 446, 722 S.E.2d at 494 (citation and internal quotation marks omitted; emphasis added).  I find it telling that the Supreme Court, exercising *its* constitutional general supervisory authority, allowed the State's petition for writ of *certiorari* in *Whitehead* to review the identical issue as is raised in the case at bar, with *no* prior review by this Court.  This suggests that the State's procedure in *Whitehead*, to wit, seeking review of the trial court's MAR decision via petition for *certiorari* directly to

the Supreme Court, is the proper route for this appeal.

In sum, this Court lacks jurisdiction to review the State's arguments by direct appeal, writ of *certiorari*, or any other procedure.[9]  Accordingly, I dissent.

---

[9] Further, the decision of the petition panel overruled this Court's published opinion in *Starkey*, which constituted binding precedent mandating that we dismiss the State's purported appeal and deny its petition for writ of *certiorari*.  *See In re Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.").