HUNTER, JR., Robert N., Judge.
 

 *175
 
 Shymel D. Jefferson ("Defendant") appeals his sentence of life imprisonment with the possibility of parole after a term of twenty-five years, alleging the statute mandating his sentence violates the Eighth Amendment of the United States Constitution pursuant to
 
 Miller v. Alabama
 
 ,
 
 567 U.S. 460
 
 ,
 
 132 S.Ct. 2455
 
 ,
 
 183 L.Ed.2d 407
 
 (2012). After review, we disagree.
 

 I. Facts and Background
 

 On 25 January 2010, Defendant-then fifteen years old-was charged by petition with first-degree murder in Rockingham County Juvenile Court. Pursuant to N.C. Gen. Stat. § 7B-2200, which requires the juvenile court to transfer any defendant accused of a Class A felony to superior court, the case was transferred to Rockingham County Superior Court. On 8 February 2010, Defendant was indicted for the first-degree murder of Timothy Seay. The case was brought to trial on 29
 
 *122
 
 May 2012. This Court summarized the facts as presented at trial in
 
 State v. Jefferson
 
 , No. 13-668,
 
 232 N.C.App. 690
 
 , 2014 N.C. App. LEXIS 256 (N.C. Ct. App. Mar. 4, 2014) (unpublished).
 

 On the night of 6 November 2009, defendant, Travis Brown, Shaquan Beamer ("Beamer"), and defendant's older cousin, Shavon Reid ("Shavon"), went to the Icehouse, a bar in Eden, North Carolina. Defendant was fifteen years old at this time and had been living with Shavon in Martinsville, Virginia. Prior to the night in question, defendant had begun carrying a pistol for protection. He brought the gun with him to the Icehouse but left it in the car when the group went inside.
 

 At the Icehouse, defendant encountered Jason Gallant ("Gallant"), Timothy Seay ("Seay"), and Terris Dandridge ("Dandridge"). After about an hour in the bar, a fistfight broke out. Defendant, Dandridge, and Gallant were all involved; defendant and Dandridge were seen pushing each other. The fight was quickly broken up by bar security, and both groups were forced to go outside. Defendant left the bar and retrieved his gun from the car.
 

 Once the crowd had moved into the street, Seay's group began taunting defendant's group. Defendant testified that he heard a gunshot during the encounter. He then fired his gun in the direction of the group of people where he thought the shot had come from until he ran out of bullets. Devin Turner, a witness to the incident, testified that
 
 *176
 
 the only people he saw firing were defendant and Shavon. Ultimately, two people were injured and one was killed as a result of the shooting. Gallant and Dandridge were wounded by gunshots to the wrist and leg, respectively. Seay was killed by a gunshot wound to the head and was also shot one time in the chest, with the bullet getting lodged in his shoulder. Police later recovered two types of shell casings from the scene-.40 caliber and .380. Expert testimony established that the nine .380 casings found at the scene and the bullet in Seay's shoulder were fired from defendant's gun.
 

 Jefferson
 
 ,
 
 2014 WL 859345
 
 at *1-2, 2014 N.C. App. LEXIS 256 at *2-3. At trial, the medical examiner testified Seay was killed by the gunshot wound to his head, which involved a larger caliber bullet than the gunshot wound to his chest. The jury found Defendant guilty of first-degree murder under the felony-murder rule. On 8 June 2012, under then-applicable state law, the trial court sentenced Defendant to a mandatory term of life without the possibility of parole.
 

 During the pendency of Defendant's appeal, the United States Supreme Court decided
 
 Miller v. Alabama
 
 , holding "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " 567 U.S. at ----,
 
 132 S.Ct. at 2460
 
 ,
 
 183 L.Ed.2d at 414-15
 
 . In response, the General Assembly enacted N.C. Gen. Stat. § 15A-1340.19B, which provided,
 
 inter alia
 
 , the sentence for a defendant found guilty of first-degree murder solely under the felony murder rule shall be life imprisonment with the possibility of parole. N.C. Gen. Stat. § 15A-1340.19B(a)(1) (2015).
 
 Jefferson
 
 ,
 
 2014 WL 859345
 
 at *2-3, 2014 N.C. App. LEXIS 256 at *6-7. A defendant sentenced under this act must serve a minimum of twenty-five years before becoming eligible for parole. N.C. Gen. Stat. § 15A-1340.19A (2015).
 

 As a result, this Court overturned Defendant's sentence on appeal and remanded to the trial court for resentencing pursuant to § 15A-1340.19B.
 
 Jefferson
 
 ,
 
 2014 WL 859345
 
 at *2-3, 2014 N.C. App. LEXIS 256 at *6-7. On 29 February 2016, the trial court held resentencing proceedings, and imposed a sentence of life with the possibility of parole after twenty-five years. Defendant entered notice of appeal in open court.
 

 II. Jurisdiction
 

 Defendant appeals a final judgment of the superior court. As such, his appeal is proper pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444(a)(1) (2015).
 

 *177
 

 III. Standard of Review
 

 "When constitutional rights are implicated, the appropriate standard of review is de novo."
 

 *123
 

 In re Adoption of S.D.W.
 
 ,
 
 367 N.C. 386
 
 , 391,
 
 758 S.E.2d 374
 
 , 378 (2014) (citation omitted). When mounting a facial constitutional challenge
 
 [1]
 
 , "[a] party must show that there are no circumstances under which the statute might be constitutional."
 
 Beaufort County Bd. of Educ. v. Beaufort County Bd. of Comm'rs
 
 ,
 
 363 N.C. 500
 
 , 502,
 
 681 S.E.2d 278
 
 , 280 (2009). "[T]he presumption is that any act passed by the legislature is constitutional, and the court will not strike it down if [it] can be upheld on any reasonable ground."
 
 State v. Bryant
 
 ,
 
 359 N.C. 554
 
 , 564,
 
 614 S.E.2d 479
 
 , 486 (2005) (internal citations omitted).
 

 IV. Analysis
 

 Defendant challenges the constitutionality of N.C. Gen. Stat. § 15A-1340.19B(a)(1), contending the statute failed to provide the trial court with the discretion to consider mitigating factors and render an individualized sentence, as required by the United States Supreme Court in
 
 Miller v. Alabama
 
 . Because the Supreme Court has not indicated the individualized sentencing required in
 
 Miller
 
 extends to sentences beyond life without parole, we must presume the statute is constitutional, and defer to the legislature.
 

 The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments" on criminal defendants. U.S. Const. amend VIII. Central to any analysis of the Eighth Amendment is the concept of proportionality. The United States Supreme Court has held the right against cruel and unusual punishment "flows from the basic precept of justice that punishment for crime should be graduated and proportioned to both the offender and the offense."
 
 Miller
 
 , 567 U.S. at ----,
 
 132 S.Ct. at 2462
 
 ,
 
 183 L.Ed.2d at 417
 
 (internal quotation marks and citations omitted). Applying this basic principle, the United States Supreme Court has issued three recent decisions limiting the State's ability to apply its "most severe penalties" to defendants who were less than eighteen years old when they committed their offenses.
 

 Id.
 

 at ----,
 
 132 S.Ct. at 2466
 
 ,
 
 183 L.Ed.2d at 421
 
 .
 

 First, in
 
 Roper v. Simmons
 
 , the Court considered "whether it is permissible under the Eighth and Fourteenth Amendments to the
 
 *178
 
 Constitution of the United States to execute a juvenile offender who was older than 15 but younger than 18 when he committed a capital crime."
 
 543 U.S. 551
 
 , 555-56,
 
 125 S.Ct. 1183
 
 , 1187,
 
 161 L.Ed.2d 1
 
 , 13 (2005). Because juveniles tend to display a "lack of maturity and an underdeveloped sense of responsibility," are vulnerable to "negative influences and outside pressures, including peer pressure," and generally possess a character that is "not as well formed" as an adult's, the Court concluded juvenile offenders may not reliably "be classified among the worst offenders."
 

 Id.
 

 at 569
 
 ,
 
 125 S.Ct. at 1195
 
 ,
 
 161 L.Ed.2d at 21-22
 
 . Moreover, these same characteristics vitiate the penological justifications for the death penalty.
 

 Id.
 

 at 571
 
 ,
 
 125 S.Ct. at 1196
 
 ,
 
 161 L.Ed.2d at 23
 
 . Because they lack self-control and rational cost-benefit thinking, juveniles are less likely to respond to the death penalty as a deterrent, and are less likely to be fully culpable for their actions.
 

 Id.
 

 As a result,
 
 Roper
 
 categorically barred the application of capital punishment to juvenile defendants.
 

 Id.
 

 at 578
 
 ,
 
 125 S.Ct. at 1200
 
 ,
 
 161 L.Ed.2d at 28
 
 .
 

 Next, in
 
 Graham v. Florida
 
 , the Court went further, barring the sentencing of juveniles to life without parole for non-homicide crimes.
 
 560 U.S. 48
 
 ,
 
 130 S.Ct. 2011
 
 ,
 
 176 L.Ed.2d 825
 
 (2010). While maintaining that a death sentence is "unique in its severity and irrevocability," the Court held it shared characteristics with a sentence of life without parole in that "[i]t deprives the convict of the most basic liberties without giving hope of restoration, except perhaps by executive clemency-the remote possibility of which does not mitigate the harshness of the sentence."
 
 Graham
 
 ,
 
 560 U.S. at 69-70
 
 ,
 
 130 S.Ct. at 2027
 
 ,
 
 176 L.Ed.2d at 842
 
 (internal citation omitted). Again focusing on the ramifications of immaturity on the penological rationale for giving the harshest sentences to juvenile offenders, the Court established another categorical
 
 *124
 
 rule, prohibiting "the imposition of a life without parole sentence on a juvenile offender who did not commit homicide."
 

 Id.
 

 at 82
 
 ,
 
 130 S.Ct. at 2034
 
 ,
 
 176 L.Ed.2d at 850
 
 .
 

 Finally, in
 
 Miller v. Alabama
 
 , the Court contemplated whether the Eighth Amendment prohibited mandatory sentences of life without parole for juveniles convicted of homicide.
 
 567 U.S. 460
 
 ,
 
 132 S.Ct. 2455
 
 ,
 
 183 L.Ed.2d 407
 
 (2012). Here, the Court synthesized its holdings in
 
 Roper
 
 and
 
 Graham
 
 to again institute a categorical bar. The Court trod more explicitly on the connection between the death penalty and life without parole, characterizing the latter as the "ultimate penalty for juveniles."
 
 Miller
 
 , 567 U.S. at ----,
 
 132 S.Ct. at 2466
 
 ,
 
 183 L.Ed.2d at 421
 
 . On that basis, the Court imported the requirement of individualized sentencing from its death penalty jurisprudence, holding when the State imposes life without parole on a juvenile, it must take into consideration the defendant's age and its "hallmark features-among them, immaturity, impetuosity, and failure
 
 *179
 
 to appreciate risks and consequences."
 

 Id.
 

 at ----,
 
 132 S.Ct. at 2468
 
 ,
 
 183 L.Ed.2d at 423
 
 . As a result, it held "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders."
 

 Id.
 

 at ----,
 
 132 S.Ct. at 2469
 
 ,
 
 183 L.Ed.2d at 424
 
 .
 

 Defendant contends the Supreme Court's holding in
 
 Miller
 
 is open-ended and may be extended to reach sentences of life
 
 with
 
 the possibility of parole. He urges us to adopt Chief Justice Roberts' reasoning in dissent that "[t]he principle behind [
 
 Miller
 
 ] seems to be only that because juveniles are different from adults, they must be sentenced differently. There is no clear reason that principle would not bar all mandatory sentences for juveniles, or any juvenile sentence as harsh as what a similarly situated adult would receive."
 
 Miller
 
 , 567 U.S. at ----,
 
 132 S.Ct. at 2482
 
 ,
 
 183 L.Ed.2d at 437-38
 
 (Roberts, C.J., dissenting) (internal citations omitted). While the Court indeed draws a bright line distinction between sentencing adults and juveniles, its reasoning in
 
 Graham
 
 and
 
 Miller
 
 suggests an equally bright line between sentences that condemn a juvenile defendant to a life in prison without hope of redemption and sentences that provide a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."
 
 Graham
 
 ,
 
 560 U.S. at 75
 
 ,
 
 130 S.Ct. at 2030
 
 ,
 
 176 L.Ed.2d at 846
 
 .
 

 Miller
 
 and the line of cases leading to it conclusively establish that in certain circumstances, "children are different" in the same way that "death is different."
 
 Miller
 
 , 567 U.S. at ----,
 
 132 S.Ct. at 2470
 
 ,
 
 183 L.Ed.2d at 425
 
 (internal citations and quotation marks omitted). The Court's rulings make clear that the trial court must consider the juvenile defendant's relative inability to exercise self-control, as well as the limited applicability of legitimate penological justifications such as retribution to defendants with reduced moral agency. Nonetheless, the Court's holdings in
 
 Graham
 
 and
 
 Miller
 
 have been carefully circumscribed. In
 
 Graham
 
 , the Court instituted a categorical bar to sentences of life without parole, but only to the class of juvenile defendants who have committed non-homicide offenses. In
 
 Miller
 

 ,
 
 the Court's holding was narrower, barring only mandatory sentences of life without parole for juvenile offenders.
 

 Moreover, the Court's holding in both
 
 Miller
 
 and
 
 Graham
 
 clearly rested upon its characterization of life without parole as the functional equivalent of the death penalty in juvenile cases.
 
 Graham
 
 ,
 
 560 U.S. at 69-70
 
 ,
 
 130 S.Ct. at 2027
 
 ,
 
 176 L.Ed.2d at
 
 842 ;
 
 Miller
 
 , 567 U.S. at ----,
 
 132 S.Ct. at 2466
 
 ,
 
 183 L.Ed.2d at 421
 
 . To wit, the
 
 Miller
 
 court stated "
 
 Graham
 
 's (and also
 
 Roper
 
 's) foundational principle [was] that imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children."
 
 Miller
 
 , 567 U.S. at ----,
 
 132 S.Ct. at 2466
 
 ,
 
 183 L.Ed.2d at 421
 
 .
 

 *180
 
 However, the Court explicitly defined the "most severe penalties" in terms of capital punishment and life without parole.
 

 Id.
 

 ("Life-without-parole terms ... share some characteristics with death sentences that are shared by
 
 no other sentences
 
 .") (quoting
 
 Graham
 
 ,
 
 560 U.S. at 69-70
 
 ,
 
 130 S.Ct. at 2027
 
 ,
 
 176 L.Ed.2d at
 
 842 ) (emphasis added). In doing so, the Court referred to "imprisoning an offender until he dies," the "lengthiest possible incarceration,"
 

 *125
 
 and the "ultimate penalty for juveniles."
 

 Id.
 

 This connection between life without the possibility of parole and individualized sentencing has been borne out in both subsequent decisions by the United States Supreme Court and several state courts asked to interpret
 
 Miller
 
 . In
 
 Montgomery v. Louisiana
 
 , the Supreme Court held
 
 Miller
 
 had retroactive effect as a substantive rule of constitutional law and invalidated the sentence of a defendant sentenced in 1963 to life without parole at the age of seventeen. --- U.S. ----,
 
 136 S.Ct. 718
 
 ,
 
 193 L.Ed.2d 599
 
 (2016). Turning to a remedy, the Court held "[a] State may remedy a
 
 Miller
 
 violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them."
 
 Montgomery
 
 , --- U.S. at ----,
 
 136 S.Ct. at 736
 
 ,
 
 193 L.Ed.2d at 622
 
 .
 

 As it has in other Eighth Amendment cases, the Court spoke approvingly of parole in
 
 Montgomery
 
 , stating that it "ensures that juveniles whose crimes reflected only transient immaturity-and who have since matured-will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment."
 

 Id.
 

 at ----,
 
 136 S.Ct. at 736
 
 ,
 
 193 L.Ed.2d at 622
 
 .
 
 See also
 

 Rummel v. Estelle
 
 ,
 
 445 U.S. 263
 
 , 280-81,
 
 100 S.Ct. 1133
 
 , 1142-43,
 
 63 L.Ed.2d 382
 
 , 395 (1980) (upholding a mandatory sentence of life with parole imposed under Texas' "three-strikes" statute, noting the Court could "hardly ignore the possibility that [defendant] will not actually be imprisoned for the rest of his life."). The Court also cited to a Wyoming statute which, like the provision under which Defendant was sentenced, makes any juvenile defendant sentenced to life imprisonment eligible for parole after twenty-five years.
 
 Wyo. Stat. Ann. § 6-10-301
 
 (c) (2016). Thus,
 
 Montgomery
 
 suggests the Court views parole as an appropriate way to provide juvenile defendants with the required "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."
 
 Graham
 
 ,
 
 560 U.S. at 75
 
 ,
 
 130 S.Ct. at 2030
 
 ,
 
 176 L.Ed.2d at 845-46
 
 .
 

 The decisions of the state courts which have been asked to extend
 
 Miller
 
 beyond explicit sentences of life without parole similarly make clear the touchstone of the
 
 Miller
 
 analysis is whether the defendant is sentenced to a life term (or its functional equivalent) without an "opportunity to obtain release based on demonstrated maturity and rehabilitation."
 

 Id.
 

 In
 
 State v. Null
 
 , the Iowa Supreme Court invalidated a
 
 *181
 
 mandatory 52.5 year sentence, noting that "geriatric release, if one is to be afforded the opportunity for release at all," does not provide the defendant a meaningful opportunity to regain his freedom and reenter society.
 
 836 N.W.2d 41
 
 , 71 (Iowa 2013). Similarly, the Wyoming, Indiana, and California supreme courts have held
 
 Miller
 
 requires individualized sentencing where one or more mandatory minimum sentences results in a
 
 de facto
 
 life sentence without parole.
 
 See, e.g.
 
 ,
 
 Bear Cloud v. State
 
 ,
 
 334 P.3d 132
 
 , 142 (Wyo. 2014) (consecutive terms of twenty and twenty-five years provided defendant would not be eligible for parole until age sixty-one);
 
 Brown v. State
 
 ,
 
 10 N.E.3d 1
 
 (Ind. 2014) (defendant sentenced to three consecutive terms adding up to one hundred and fifty years);
 
 People v. Caballero
 
 ,
 
 55 Cal.4th 262
 
 ,
 
 145 Cal.Rptr.3d 286
 
 ,
 
 282 P.3d 291
 
 , 294-95 (2012) (defendant sentenced to life with parole but was only eligible for release after serving one hundred and ten years of his term).
 

 Defendant's sentence is neither an explicit nor a
 
 de facto
 
 term of life imprisonment without parole. Upon serving twenty-five years of his sentence, Defendant will become eligible for parole, where state law mandates he be given an opportunity to provide the Post-Release Supervision and Parole Commission with evidence of his maturity and rehabilitation.
 
 See
 
 N.C. Gen. Stat. § 15A-1371(b)(3) (2015) ("The Post-Release Supervision and Parole Commission
 
 must
 
 consider any information provided by [the prisoner] before consideration of parole.") (emphasis added). The Commission may only refuse him parole if it appears Defendant is a "substantial risk" to violate the conditions of his parole, his release would "unduly depreciate the seriousness of his crime or promote disrespect for law," his rehabilitation would be better served by remaining in prison, or he
 
 *126
 
 posed a substantial risk of recidivism.
 
 [2]
 
 N.C. Gen. Stat. § 15A-1371(d) (2015). Because "[p]arole is intended to be a means of restoring offenders who are good social risks to society," its very purpose is to allow Defendant to demonstrate he has been rehabilitated and obtained sufficient maturity as to have overcome whatever age-related weaknesses in character that led to the commission of his crime.
 
 Jernigan v. State
 
 ,
 
 10 N.C.App. 562
 
 , 565,
 
 179 S.E.2d 788
 
 , 790 (1971) (quoting
 
 Zerbst v. Kidwell
 
 ,
 
 304 U.S. 359
 
 , 363,
 
 58 S.Ct. 872
 
 , 874,
 
 82 L.Ed. 1399
 
 , 1401 (1938) ).
 

 Consequently, we conclude neither the United States Supreme Court nor the North Carolina Supreme Court has yet held the Eighth
 
 *182
 
 Amendment requires the trial court to consider these mitigating factors before applying such a sentence to a juvenile defendant.
 
 [3]
 
 Because Defendant has failed to meet his burden of proving the statute is unconstitutional in all applications, we must presume the statute is constitutional and defer to the legislature, which has the exclusive authority to prescribe criminal punishments.
 
 State v. Whitehead
 
 ,
 
 365 N.C. 444
 
 , 446,
 
 722 S.E.2d 492
 
 , 494 (2012).
 
 See also
 

 Jernigan v. State
 
 ,
 
 279 N.C. 556
 
 , 563-64,
 
 184 S.E.2d 259
 
 , 265 (1971).
 

 Nevertheless, we note there may indeed be a case in which a mandatory sentence of life with parole for a juvenile is disproportionate in light of a particular defendant's age and immaturity. That case is not now before us. Defendant chooses only to assert that N.C. Gen. Stat. § 15A-1340.19B(a)(1) fails to provide a trial judge with discretion to consider the mitigating factors of youth and immaturity. He does not show the existence of circumstances indicating the sentence is particularly cruel or unusual as-applied to him.
 

 Because Defendant fails to meet the burden of a facial constitutional challenge and does not bring an as-applied challenge, the trial court's sentence is
 

 AFFIRMED.
 

 Judge DIETZ concurs.
 

 Judge BRYANT concurs in result only in a separate opinion.
 

 BRYANT, Judge, concurring in the result by separate opinion.
 

 *183
 
 The majority undergoes a thorough constitutional analysis of what it interprets as a facial constitutional challenge as opposed to an applied one. I concur in the result reached by the majority but write separately to address the narrower issue raised by defendant in his appeal: whether the trial court had discretion under the statute to consider mitigating circumstances relating to a defendant's youth, community, and ability to benefit from rehabilitation, and impose an individualized sentence.
 

 In this case, "[t]he jury rejected the theories of premeditation and deliberation and acting in concert, but convicted defendant based on the felony murder rule, with the underlying felony being assault with a deadly
 
 *127
 
 weapon inflicting serious injury."
 
 State v. Jefferson
 
 , No. COA13-668,
 
 232 N.C.App. 690
 
 ,
 
 2014 WL 859345
 
 , at *2 (N.C. Ct. App. Mar. 4, 2014) (unpublished). The question of whether the trial court has discretion in this matter was answered squarely by this Court in
 
 State v. Lovette
 
 ,
 
 225 N.C.App. 456
 
 ,
 
 737 S.E.2d 432
 
 (2013) (
 
 Lovette I
 
 ), where it set out sentencing requirements for defendants who are under the age of eighteen at the time of offense, following
 
 Miller v. Alabama
 
 ,
 
 567 U.S. 460
 
 ,
 
 132 S.Ct. 2455
 
 ,
 
 183 L.Ed.2d 407
 
 (2012), and the enactment of N.C. Gen. Stat. §§ 15A-1340.19A and -1340.19B:
 

 In response to the
 
 Miller
 
 decision, our General Assembly enacted N.C. Gen. Stat. § 15A-1476
 
 et seq.
 
 ("the Act"), entitled "An act to amend the state sentencing laws to comply with the United States Supreme Court Decision in
 
 Miller v. Alabama
 
 ." N.C. Sess. Law 2012-148. The Act applies to defendants convicted of first-degree murder who were under the age of eighteen at the time of the offense. N.C. Gen. Stat. § 15A-1340.19A. Section 15A-1340.19B(a) provides that if the defendant was convicted of first-degree murder
 
 solely
 
 on the basis of the felony murder rule, his sentence shall be life imprisonment with parole. N.C. Gen. Stat. § 15A-1340.19B(a)(1) (2012).
 
 In all other cases
 
 , the trial court is directed to hold a hearing to consider any mitigating circumstances,
 
 inter alia
 
 , those related to the defendant's age at the time of the offense, immaturity, and ability to benefit from rehabilitation. N.C. Gen. Stat. §§ 15A-1340.19B, 15A-1340.19C.
 

 Lovette I
 
 ,
 
 225 N.C.App. at 470
 
 ,
 
 737 S.E.2d at 441
 
 (emphasis added) (footnotes omitted);
 
 see also
 

 State v. Lovette
 
 ,
 
 233 N.C.App. 706
 
 , 713,
 
 758 S.E.2d 399
 
 , 405 (
 
 Lovette II
 
 ) (holding that "the Court's prior opinion [in
 
 Lovette I
 
 ] is the law of the case"),
 
 appeal dismissed
 
 ,
 
 *184
 
 --- N.C. ----,
 
 763 S.E.2d 392
 
 (2014) (allowing defendant's motion to dismiss the appeal "for lack of substantial constitutional question filed by the State of NC"). In other words, where a defendant is convicted of first-degree murder under a theory other than the felony-murder rule, the defendant is entitled to a hearing regarding mitigating circumstances.
 
 See
 

 Lovette I
 
 ,
 
 225 N.C.App. at 470
 
 ,
 
 737 S.E.2d at 441
 
 .
 

 In the instant case, defendant was fifteen years old at the time of the murder, and his conviction was based "solely" on the felony-murder rule.
 
 See
 

 Jefferson
 
 ,
 
 2014 WL 859345
 
 , at *2. Accordingly, N.C.G.S. § 15A-1340.19B(a)(1) requires that defendant be sentenced to life imprisonment with parole.
 

 Id.
 

 § 15A-1340.19B(a)(1). In turn, N.C.G.S. § 15A-1340.19A defines "life imprisonment with parole" to mean that "defendant shall serve a minimum of 25 years imprisonment prior to becoming eligible for parole."
 

 Id.
 

 § 15A-1340.19A. As defendant was sentenced to life imprisonment with the possibility of parole in twenty-five years at the 29 February 2016 resentencing hearing, and this Court has previously held that N.C. Gen. Stat. §§ 15A-1340 and 15A-1340B comply with
 
 Miller
 
 ,
 
 see
 

 State v. James
 
 , --- N.C.App. ----, ----,
 
 786 S.E.2d 73
 
 , 78-79 (2016) ;
 
 State v. Pemberton
 
 ,
 
 228 N.C.App. 234
 
 , 247,
 
 743 S.E.2d 719
 
 , 728 (2013), defendant's argument on appeal that his sentence fails to provide for sufficient discretion to consider mitigating factors is without merit. Accordingly, I concur in the result reached by the majority and affirm the trial court.
 

 [1]
 

 While Defendant did not explicitly use this label, he makes no argument that the statute was applied unconstitutionally in his case and does not claim that the application of the law to his case was uniquely flawed. Rather, he merely asserts that N.C. Gen. Stat. § 15A-1340.19B(a)(1) does not provide a trial judge with sufficient discretion to consider his mitigating factors.
 

 [2]
 

 The official commentary to the North Carolina General Statutes states "[t]he Commission intended that this be an exclusive list of legitimate bases for denying parole." N.C. Gen. Stat. § 15A-1371, cmt. (2015).
 

 [3]
 

 We would like to note Defendant declined to address whether his sentence violated the North Carolina Constitution. Unlike the United States Constitution's Eighth Amendment, Art. 1, Sec. 27 of the state constitution requires that courts not inflict "cruel
 
 or
 
 unusual punishments" (emphasis added). While our courts have historically applied the same analysis to both provisions, it is unclear "[w]hether the word 'unusual' has any qualitative meaning different from 'cruel'.... On the few occasions [the United States Supreme Court] has had to consider the meaning of the phrase, precise distinctions between cruelty and unusualness do not seem to have been drawn."
 
 State v. Green
 
 ,
 
 348 N.C. 588
 
 , 603,
 
 502 S.E.2d 819
 
 , 828 (1998) (quoting
 
 Trop v. Dulles
 
 ,
 
 356 U.S. 86
 
 , 100 n.32,
 
 78 S.Ct. 590
 
 , 598 n.32,
 
 2 L.Ed.2d 630
 
 , 642 n.32 (1958) ).
 

 North Carolina remains the only state in the nation which permits juveniles as young as thirteen years old to be tried as adults without allowing them the ability to appeal for return to the juvenile system. Tamar Birkhead, North Carolina, Juvenile Court Jurisdiction, and the Resistance to Reform,
 
 86 N.C.L. Rev. 1443
 
 , 1445 (2008). See also N.C. Gen. Stat. §§ 7B-2200, 7B-2203 (2015). Furthermore, the statute requires transfer for any Class A felony where the trial court finds probable cause. N.C. Gen. Stat. § 7B-2200 (2015). Because Defendant did not challenge this provision, its constitutionality is not before us and is a question we do not now decide.