DAVIS, Judge.
 

 *607
 

 *356
 
 In this case, Sethy Tony Seam ("Defendant") challenges the constitutionality of his sentence of life imprisonment with the possibility of parole for his conviction of felony murder when he was sixteen years old. Because we conclude that his sentence is not grossly disproportionate under the Eighth Amendment of the United States Constitution, we hold that his sentence is constitutional.
 

 Factual and Procedural Background
 

 This matter is before this Court for the third time. The relevant facts regarding Defendant's underlying crime are set out in full in our decision in
 
 State v.
 

 Seam,
 

 145 N.C.App. 715
 
 ,
 
 552 S.E.2d 708
 
 , 2001 N.C. App. LEXIS 773 (2001) (unpublished) (hereinafter "
 
 Seam I
 
 ").
 

 ... On the evening of 19 November 1997, defendant and Freddie Van walked to King's Superette in Lexington, North Carolina. They both entered the store around closing time when the store's proprietor, Mr. Harold King, Sr. (Mr. King), was squatting down in the rear of the store, fixing the beer cooler. Defendant and Van were standing in the middle of the store when Van pulled a .22 caliber pistol from the front of his pants and said, "Freeze, give me all your money." As Van approached Mr. King from behind, Mr. King stood up and said, "How much do you all want?" At this time, Van pointed the pistol at Mr. King's
 
 *357
 
 back and ordered him to the cash register at the front of the store. As Van and Mr. King were approaching the cash register, defendant also moved closer to the cash register. Suddenly, Van knocked Mr. King's glasses off, whereupon Mr. King turned around and punched Van in the mouth. An argument ensued and Van shot Mr. King three times, fatally wounding him. Defendant and Van attempted to open the cash register but were unsuccessful. They then ran from the store. Thereafter, defendant and Van agreed they would not talk to anyone about this event.
 

 The next day, defendant and Jason Kruisenga visited the home of brothers, Jeremy and Stephen Weier. Defendant offered to sell a black long nose .22 caliber pistol to Jeremy and Stephen Weier but both brothers declined. However, defendant, Kruisenga, and Stephen Weier went into the nearby woods and fired the pistol about 15 times. The ammunition used belonged to Stephen Weier, although defendant had his own ammunition. After this practice shooting, Kruisenga and Stephen Weier saw defendant hide the pistol in some weeds. The following day, Kruisenga and Stephen Weier saw Van and they went to the weeded area where defendant had hidden the pistol. Kruisenga retrieved the pistol and gave it to Van who left with it.
 

 Seam I
 
 , 552 S.E.2d at ---- - ----,
 
 2001 WL 1245379
 
 at *1, 2001 N.C. App. LEXIS 773 at **1-2 (brackets omitted).
 

 On 5 January 1998, a Davidson County grand jury indicted Defendant for first-degree murder and attempted robbery with a dangerous weapon. In September 1999, a jury trial was held before the Honorable Charles C. Lamm in Davidson County Superior Court. On 30 September 1999, the jury convicted Defendant of the attempted robbery offense along with first-degree murder based upon the felony murder rule. Judge Lamm imposed a sentence of life imprisonment without the possibility of parole and arrested judgment on the attempted robbery conviction. Defendant appealed to this Court, and in
 
 Seam I
 
 we upheld Defendant's conviction.
 

 Id.,
 

 552 S.E.2d at ----,
 
 2001 WL 1245379
 
 at *, 2001 N.C. App. LEXIS 773 at *14.
 

 Defendant filed a motion for appropriate relief on 29 April 2011 alleging, in part, that his sentence constituted cruel and unusual punishment in violation of the Eighth Amendment. On 8 August 2013, Judge Theodore S. Royster, Jr. held that Defendant's sentence was, in fact, unconstitutional based on the United States Supreme Court's holding in
 
 *358
 

 Miller v. Alabama
 
 ,
 
 567 U.S. 460
 
 ,
 
 132 S.Ct. 2455
 
 ,
 
 183 L.Ed.2d 407
 
 (2012), which prohibited the imposition of mandatory sentences of life imprisonment without the possibility
 
 *608
 
 of parole upon juveniles. On that same day, Judge Royster ordered that Defendant be resentenced pursuant to
 
 Miller
 
 . Our Supreme Court affirmed Judge Royster's 8 August 2013 order and remanded the case for resentencing.
 
 State v. Seam
 
 ,
 
 369 N.C. 418
 
 ,
 
 794 S.E.2d 439
 
 (2016).
 

 On 30 December 2016, Judge Royster resentenced Defendant to a term of 183-229 months imprisonment. The State appealed, and on 5 September 2017 this Court vacated Judge Royster's resentencing order.
 
 State v. Seam
 
 , --- N.C. App. ----,
 
 805 S.E.2d 302
 
 (2017). We held that Judge Royster had lacked jurisdiction to resentence Defendant because the mandate from the Supreme Court had not yet issued, and we therefore remanded the case for a second resentencing hearing.
 

 Id.
 

 at ----,
 
 805 S.E.2d at 303
 
 .
 

 On 11 October 2017, a new resentencing hearing was held before the Honorable Jeffrey K. Carpenter. Following the hearing, Judge Carpenter entered an order resentencing Defendant to life imprisonment with the possibility of parole. Defendant gave timely notice of appeal to this Court.
 

 Analysis
 

 In this appeal, Defendant asserts that the sentence imposed by Judge Carpenter violates the Eighth Amendment as well as Article I, Section 27 of the North Carolina Constitution. In addition, he contends that his sentence is in violation of the constitutional prohibition against
 
 ex post facto
 
 laws. We address each argument in turn.
 

 I. Eighth Amendment
 

 A. Background
 

 In order to analyze Defendant's argument, it is necessary to address in some detail relevant caselaw from the United States Supreme Court as well as from our own appellate courts. In
 
 Miller
 
 , as noted above, the United States Supreme Court held that the Eighth Amendment forbids the imposition upon a juvenile defendant of a mandatory sentence of life imprisonment
 
 without
 
 the possibility of parole.
 
 Miller
 
 ,
 
 567 U.S. at 489
 
 ,
 
 132 S.Ct. at 2474-75
 
 ,
 
 183 L.Ed.2d at 430
 
 . The Court ruled that before such a sentence can be imposed mitigating circumstances relating to the juvenile's age and age-related characteristics must be considered.
 

 Id.
 

 In
 
 Montgomery v. Louisiana
 
 , --- U.S. ----,
 
 136 S.Ct. 718
 
 ,
 
 193 L.Ed.2d 599
 
 (2016), the Supreme Court held that its decision in
 
 Miller
 
 operated retroactively
 
 *359
 
 such that it applied to any person who had previously been sentenced as a juvenile to life imprisonment without the possibility of parole.
 

 Id.
 

 at ----,
 
 136 S.Ct. at 736
 
 ,
 
 193 L.Ed.2d at 622
 
 . Notably, however, the Court explained that "[g]iving
 
 Miller
 
 retroactive effect ... does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State may remedy a
 
 Miller
 
 violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them."
 

 Id.
 

 In response to
 
 Miller
 
 , the North Carolina General Assembly enacted N.C. Gen. Stat. § 15A-1340.19A
 
 et seq.
 
 , a statutory sentencing scheme for juveniles subject to life imprisonment without the possibility of parole. N.C. Gen. Stat. § 15A-1340.19B states, in pertinent part, as follows:
 

 (1) If the sole basis for conviction of a count or each count of first degree murder was the felony murder rule, then the court shall sentence the defendant to life imprisonment with parole.
 

 N.C. Gen. Stat. § 15A-1340.19B(a) (2017).
 

 In
 
 State v. Jefferson
 
 , --- N.C. App. ----,
 
 798 S.E.2d 121
 
 ,
 
 disc. review denied
 
 ,
 
 370 N.C. 214
 
 ,
 
 804 S.E.2d 527
 
 (2017),
 
 cert. denied
 
 , --- U.S. ----,
 
 138 S.Ct. 1169
 
 ,
 
 200 L.Ed. 2d 318
 
 (2018), this Court considered a categorical constitutional challenge to the requirement in N.C. Gen. Stat. § 15A-1340.19B(a)(1) that all juveniles convicted of first-degree murder under the felony murder rule receive a mandatory sentence of life imprisonment with the possibility of parole.
 

 Id.
 

 at ----,
 
 798 S.E.2d at 123
 
 . The defendant in
 
 Jefferson
 
 argued that § 15A-1340.19B(a)(1) was unconstitutional under the Eighth Amendment on the theory that
 
 Miller
 
 's holding should "be extended to reach sentences of life
 
 with
 
 the possibility of parole."
 

 Id.
 

 at ----,
 
 798 S.E.2d at 124
 
 .
 

 *609
 
 We upheld the constitutionality of N.C. Gen. Stat. § 15A-1340.19B(a)(1), noting that in
 
 Montgomery
 
 the United States Supreme Court had expressly "held that a State may remedy a
 
 Miller
 
 violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them ... [because] it ensures that juveniles ... will not be forced to serve disproportionate sentences in violation of the Eighth Amendment."
 
 Id
 
 . at ----,
 
 798 S.E.2d at 125
 
 (internal citation and quotation marks omitted). In our opinion, we further stated the following:
 

 The decisions of the state courts which have been asked to extend
 
 Miller
 
 beyond explicit sentences of life without parole similarly make clear the touchstone of the
 
 *360
 

 Miller
 
 analysis is whether the defendant is sentenced to a life term (or its functional equivalent) without an opportunity to obtain release based on demonstrated maturity and rehabilitation. In
 
 State v. Null
 
 [
 
 836 N.W.2d 41
 
 (2013) ], the Iowa Supreme Court invalidated a mandatory 52.5 year sentence, noting that geriatric release, if one is to be afforded the opportunity for release at all, does not provide the defendant a meaningful opportunity to regain his freedom and reenter society. Similarly, the Wyoming, Indiana, and California supreme courts have held
 
 Miller
 
 requires individualized sentencing where one or more mandatory minimum sentences results in a
 
 de facto
 
 life sentence without parole.
 

 Defendant's sentence is neither an explicit nor a
 
 de facto
 
 term of life imprisonment without parole. Upon serving twenty-five years of his sentence, Defendant will become eligible for parole, where state law mandates he be given an opportunity to provide the Post-Release Supervision and Parole Commission with evidence of his maturity and rehabilitation. The Commission may only refuse him parole if it appears Defendant is a substantial risk to violate the conditions of his parole, his release would unduly depreciate the seriousness of his crime or promote disrespect for law, his rehabilitation would be better served by remaining in prison, or he posed a substantial risk of recidivism. Because parole is intended to be a means of restoring offenders who are good social risks to society, its very purpose is to allow Defendant to demonstrate he has been rehabilitated and obtained sufficient maturity as to have overcome whatever age-related weaknesses in character that led to the commission of his crime.
 

 Consequently, we conclude neither the United States Supreme Court nor the North Carolina Supreme Court has yet held the Eighth Amendment requires the trial court to consider these mitigating factors before applying such a sentence to a juvenile defendant. Because Defendant has failed to meet his burden of proving the statute is unconstitutional in all applications, we must presume the statute is constitutional and defer to the legislature, which has the exclusive authority to prescribe criminal punishments.
 

 Jefferson
 
 , --- N.C. at ----,
 
 798 S.E.2d at 125-26
 
 (internal citations, quotation marks, and brackets omitted).
 

 *361
 
 Thus,
 
 Jefferson
 
 makes clear that N.C. Gen. Stat. § 15A-1340.19B(a)(1) is not facially unconstitutional. In the present case, however, Defendant claims to be making a different argument than that at issue in
 
 Jefferson
 
 - that is, he contends that "[t]he current North Carolina statute for sentencing juveniles is unconstitutional
 
 as applied to
 
 [Defendant] because his sentence is not proportioned to the offender and the offense; and because the sentencing judge had no discretion to consider a different option." (Emphasis added.)
 

 Defendant concedes that his sentence is not directly implicated by the holding in
 
 Miller
 
 given that he did not receive a sentence of life imprisonment
 
 without
 
 the possibility of parole. Instead, he argues,
 
 Miller
 
 and
 
 Montgomery
 
 should be construed so as to entitle him to a sentencing hearing during which the court would possess the discretion to consider whether the sentence of life imprisonment with parole is appropriate given "his age and age-related characteristics," including "immaturity, impetuosity, and failure to appreciate risks and consequences; the family and home environment that surrounds the juvenile; the circumstances of the offense, including
 
 *610
 
 the extent of his participation in the conduct and the way familial and peer pressures may have affected him; and the inability to deal with police or prosecutors or his own attorneys."
 

 However, as Defendant acknowledges,
 
 Miller
 
 specifically requires such an individualized consideration of these types of mitigating factors only in cases where a juvenile defendant has been sentenced to life imprisonment
 
 without
 
 the possibility of parole.
 
 See
 

 Miller
 
 ,
 
 567 U.S. at 480
 
 ,
 
 132 S.Ct. at 2469-70
 
 ,
 
 183 L.Ed.2d at 424
 
 . Because Defendant's sentence affords him the possibility of parole,
 
 Miller
 
 is inapplicable.
 

 Based on our thorough review of the relevant Eighth Amendment caselaw, it is clear that the type of "as applied" challenge Defendant seeks to bring in this case is not legally available to him. Instead, he is limited solely to a review of whether his sentence was grossly disproportionate to his crime. This Court discussed the nature of this type of review in
 
 State v. Stubbs
 
 ,
 
 232 N.C. App. 274
 
 ,
 
 754 S.E.2d 174
 
 (2014),
 
 aff'd
 
 ,
 
 368 N.C. 40
 
 ,
 
 770 S.E.2d 74
 
 (2015).
 

 As to [Eighth Amendment challenges] in which the Court considers whether a term-of-years sentence is unconstitutionally excessive given the circumstances of a case, the Court [in
 
 Graham v. Florida
 
 ,
 
 560 U.S. 48
 
 ,
 
 130 S.Ct. 2011
 
 ,
 
 176 L.Ed.2d 825
 
 (2010) ] noted that "it has been difficult for [challengers] to establish a lack of
 
 *362
 
 proportionality."
 

 Id.
 

 at 59
 
 ,
 
 130 S.Ct. at 2021
 
 ,
 
 176 L.Ed.2d at 836
 
 . Referring to
 
 Harmelin v. Michigan
 
 ,
 
 501 U.S. 957
 
 ,
 
 111 S.Ct. 2680
 
 ,
 
 115 L.Ed.2d 836
 
 (1991), as a leading case on the review of Eighth Amendment challenges to term-of-years sentences as disproportionate, Justice Kennedy delivering the opinion of the
 
 Graham
 
 court acknowledged his concurring opinion in
 
 Harmelin
 
 : "[T]he Eighth Amendment contains a 'narrow proportionality principle,' that 'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are "grossly disproportionate" to the crime.' "
 
 Graham
 
 ,
 
 560 U.S. at 59-60
 
 ,
 
 130 S.Ct. at 2021
 
 , L.Ed.2d at 836 (quoting
 
 Harmelin
 
 ,
 
 501 U.S. at 997, 1000-1001
 
 ,
 
 111 S.Ct. at 2705
 
 ,
 
 115 L.Ed.2d at 836
 
 (Kennedy, J., concurring in part and concurring in judgment) ).
 
 Accord
 

 Rummel v. Estelle
 
 ,
 
 445 U.S. 263
 
 , 288,
 
 100 S.Ct. 1133
 
 ,
 
 62 L.Ed.2d 832
 
 [
 
 63 L.Ed.2d 382
 
 ] (1980) (Powell, J., dissenting ("The scope of the Cruel and Unusual Punishments Clause extends ... to punishments that are grossly disproportionate. Disproportionality analysis ... focuses on whether, a person deserves such punishment .... A statute that levied a mandatory life sentence for overtime parking might well deter vehicular lawlessness, but it would offend our felt sense of justice. The Court concludes today that the principle of disproportionality plays a role in the review of sentences imposing the death penalty, but suggests that the principle may be less applicable when a noncapital sentence is challenged.") ).
 

 In
 
 Harmelin
 
 ,
 
 501 U.S. 957
 
 ,
 
 111 S.Ct. 836
 
 [2680],
 
 115 L.Ed.2d 836
 
 , the defendant challenged his sentence of life in prison without the possibility of parole on the grounds that it was "significantly" disproportionate to his crime, possession of 650 or more grams of cocaine. The defendant further argued that because the sentence was mandatory upon conviction, it amounted to cruel and unusual punishment as it precluded consideration of individual mitigating circumstances.
 

 Id.
 

 at 961
 
 , 111 S.Ct. at 2683,
 
 115 L.Ed.2d at
 
 843 n.1. In an opinion delivered by Justice Scalia, a majority of the Court held that the sentence was not cruel and unusual punishment solely because it was mandatory upon conviction. In addressing the defendant's alternative argument, that his sentence of life in prison without
 
 *363
 
 possibility of parole was significantly disproportionate to his crime of possessing 650 or more grams of cocaine, a majority of the Court concluded that the defendant's sentence did not run afoul of the Eighth Amendment; however, the Court revealed varied views as to whether the Eighth Amendment includes a protection against disproportionate sentencing and if so, to what extent.
 
 See also
 

 Ewing v. California
 
 ,
 
 538 U.S. 11
 
 ,
 
 123 S.Ct. 1179
 
 ,
 
 155 L.Ed.2d 108
 
 (2003) (holding that the defendant's sentence of twenty-five years to life for felony grand theft under
 
 *611
 
 California's "three strikes and you're out" law did not violate the Eighth Amendment's prohibition on cruel and unusual punishments).
 
 Cf.
 

 Solem v. Helm
 
 ,
 
 463 U.S. 277
 
 ,
 
 103 S.Ct. 3001
 
 ,
 
 77 L.Ed.2d 637
 
 (1983) (holding that South Dakota's sentence of life without possibility of parole for uttering a "no account" check after the defendant had previously been convicted of six non-violent felonies was disproportionate to his crime and prohibited by the Eighth Amendment).
 

 Stubbs
 
 ,
 
 232 N.C. App. at 282-83
 
 ,
 
 754 S.E.2d at 179-80
 
 .
 

 We are also guided by our Supreme Court's decision in
 
 State v. Green
 
 ,
 
 348 N.C. 588
 
 ,
 
 502 S.E.2d 819
 
 (1998),
 
 cert. denied
 
 ,
 
 525 U.S. 1111
 
 ,
 
 119 S.Ct. 883
 
 ,
 
 142 L.Ed.2d 783
 
 (1999). In
 
 Green
 
 , the defendant was convicted of a first-degree sexual offense that he committed when he was thirteen years old, and he was sentenced to a mandatory term of life imprisonment without the possibility of parole.
 
 Id.
 
 at 592,
 
 502 S.E.2d at 822
 
 . On appeal, the defendant claimed that his sentence violated the Eighth Amendment because it was grossly disproportionate given his young age.
 
 Id.
 
 at 609,
 
 502 S.E.2d at 832
 
 . The Court rejected this argument, stating the following:
 

 [A] criminal sentence fixed by the legislature must be proportionate to the crime committed. However, in
 
 Harmelin
 
 , the United States Supreme Court held that outside of the capital context, there is no general proportionality principle inherent in the prohibition against cruel and unusual punishment. Indeed, the prohibition against cruel and unusual punishment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are grossly disproportionate to the crime. Only in exceedingly rare noncapital cases will sentences imposed be so grossly disproportionate as to be considered cruel or unusual.
 

 *364
 

 Green
 
 ,
 
 348 N.C. at 609
 
 ,
 
 502 S.E.2d at 831-32
 
 (internal citations and quotation marks omitted).
 
 [1]
 
 Thus, in order to prevail in his Eighth Amendment challenge, Defendant must demonstrate that his sentence is grossly disproportionate to the offense for which he was convicted.
 

 B. Gross Disproportionality
 

 Having determined that Defendant here is entitled only to a review of his sentence for gross disproportionality, we proceed to apply that test. As an initial matter, we note from the record that the trial court appears to have been under the misapprehension that no further analysis under the Eighth Amendment could ever be appropriate in this context due to the mandatory nature of the punishment required under N.C. Gen. Stat. § 15A-1340.19B(a)(1). This belief was mistaken because the trial court did possess the authority to make a determination as to whether Defendant's sentence was, in fact, grossly disproportionate. However, as the cases discussed above make clear, Defendant was not entitled to an evidentiary hearing or accompanying findings of fact as to the possible existence of mitigating factors. Rather, the only issue proper for resolution was whether Defendant's sentence of life imprisonment with the possibility of parole is grossly disproportionate to his crime.
 

 Therefore, because we are capable of making such a determination in the present appeal, a remand for the trial court to do so is unnecessary and would be inconsistent with considerations of judicial economy.
 
 See
 

 State v. Fernandez
 
 , --- N.C. App. ----, ----,
 
 808 S.E.2d 362
 
 , 368 (2017) (holding that this Court could address as-applied constitutional challenge to statute even where trial court failed to make findings of fact because no such findings were necessary);
 
 see also
 

 Coucoulas/Knight Properties, LLC v. Town of Hillsborough
 
 ,
 
 199 N.C. App. 455
 
 , 458,
 
 683 S.E.2d 228
 
 , 231 (2009) ("[I]n the interests of judicial economy, when the entirety of the record is before us, this Court may conclude remand is unnecessary."),
 
 aff'd per curiam
 
 ,
 
 *612
 

 364 N.C. 127
 
 ,
 
 691 S.E.2d 411
 
 (2010) ;
 
 State v. Wilson
 
 ,
 
 127 N.C. App 129
 
 , 133,
 
 488 S.E.2d 303
 
 , 306 (1997) (determining that remand was not required because it would serve no useful purpose, "particularly from the point of view of judicial economy").
 

 Based on our thorough review of the record and the arguments of counsel, we conclude that this is not an example of the "exceedingly unusual" case where a defendant's sentence is grossly disproportionate
 
 *365
 
 to his crime.
 
 Green
 
 ,
 
 348 N.C. at 609
 
 ,
 
 502 S.E.2d at 832
 
 . The gravity of the offense of felony murder is beyond argument. Moreover, even assuming
 
 arguendo
 
 that it is appropriate for us to consider the extent of Defendant's actual participation in the crime, the depth of his involvement is undisputed. While Defendant did not fire the gun that killed Harold King, he was nonetheless an active participant in the events that resulted in King's murder. Defendant entered the store with Freddy Van for the purpose of committing a robbery and approached the cash register while King was being held at gunpoint.
 
 Seam I
 
 , 552 S.E.2d at ----,
 
 2001 WL 1245379
 
 at *1, 2001 N.C. App. LEXIS 773 at *2. After King was shot, Defendant did not render assistance to him or call 911.
 

 Id.
 

 Instead, he attempted to open the cash register to steal money from the store.
 

 Id.
 

 Moreover, after leaving the store, Defendant agreed with Van not to discuss the murder with anyone else and later tried to profit from the crime by selling the murder weapon.
 

 Id.
 

 When his friends refused to buy the gun, Defendant buried it in the woods.
 

 Id.
 

 Thus, we are unable to agree with Defendant that his sentence of life imprisonment with the possibility of parole is grossly disproportionate to the severity of his crime. His Eighth Amendment argument is therefore overruled.
 

 II. Article I, Section 27 of the North Carolina Constitution
 

 Defendant also contends that his sentence is unconstitutional based on the North Carolina Constitution regardless of its constitutionality under the Eighth Amendment. Article I, Section 27 of the North Carolina Constitution prohibits the infliction of "cruel
 
 or
 
 unusual punishments." N.C. Const. art. I, § 27 (emphasis added). The wording of this provision differs from the language of the Eighth Amendment, which prohibits the infliction of "cruel
 
 and
 
 unusual punishments." U.S. Const. amend. VIII (emphasis added).
 

 Despite this difference in the wording of the two provisions, however, our Supreme Court "historically has analyzed cruel and/or unusual punishment claims by criminal defendants the same under both the federal and state Constitutions."
 
 Green
 
 ,
 
 348 N.C. at 603
 
 ,
 
 502 S.E.2d at
 
 828 ;
 
 see also
 

 Stubbs,
 

 232 N.C. App. at 280
 
 ,
 
 754 S.E.2d at 178
 
 (analyzing "cruel and/or unusual punishment" claim the same under both federal and state constitutional provisions);
 
 State v. Pettigrew
 
 ,
 
 204 N.C. App. 248
 
 , 258,
 
 693 S.E.2d 698
 
 , 705 (noting that standard is identical under both federal and state constitutions),
 
 appeal dismissed
 
 ,
 
 364 N.C. 439
 
 ,
 
 706 S.E.2d 467
 
 (2010). Thus, because we have determined that Defendant's sentence does not violate the Eighth Amendment, we likewise conclude it passes muster under Article I, Section 27 of the North Carolina Constitution.
 

 *366
 

 III.
 
 Ex Post Facto
 
 Law
 

 Defendant's final argument is that because N.C. Gen. Stat. § 15A-1340.19B did not exist at the time he committed his crime, his sentence constitutes a violation of the prohibition against
 
 ex post facto
 
 laws. However, as Defendant's attorney conceded at oral argument, a virtually identical contention was rejected by our Supreme Court in
 
 State v. James
 
 ,
 
 371 N.C. 77
 
 ,
 
 813 S.E.2d 195
 
 (2018). Therefore,
 
 James
 
 forecloses Defendant's argument on this issue.
 

 Conclusion
 

 For the reasons stated above, we conclude that Defendant's sentence of life imprisonment with the possibility of parole is constitutional.
 

 AFFIRMED.
 

 Judges HUNTER, JR. and MURPHY concur.
 

 [1]
 

 We recognize that
 
 Green
 
 was decided prior to the United States Supreme Court's decision in
 
 Miller
 
 . We nevertheless find
 
 Green
 
 to be instructive as it is the North Carolina Supreme Court's most recent decision applying the "grossly disproportionate" test under the Eighth Amendment.